| 84 | 281 |
| 115 | 635 |

GEORGE THOMPSON v. THE LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY.

*Negligence — Master and servant — Fellow-servants — Incompetent employé.*

1. Previous negligence on the part of a railroad engineer, if established, is not important unless he is also shown to have been negligent at the time of the injury for which suit is brought.

2. In the absence of any evidence tending to show that a railroad engineer was negligent in allowing the fireman to operate the engine at the time the plaintiff was injured while attempting to couple cars, and which alleged negligence is the gist of plaintiff's action, a verdict should be directed for the defendant.

Error to Kent. (Burch, J.) Argued December 4, 1890. Decided December 24, 1890.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*FitzGerald & Barry* (*Charles Chandler* and *Francis A. Stace*, of counsel), for appellant, contended:

1. Under his declaration, plaintiff was bound to prove—
    *a*—That the fireman was raw and unskilled, and incompetent to operate the engine;
    *b*—That the engineer was in the habit of allowing incompetent persons run his engine;
    *c*—That the defendant had notice of this habit of the engineer, or that it was so notorious that it was its duty to have known it;
    *d*—That the incompetency of the fireman was the proximate cause of the injury; citing *Catlin v. Railroad Co.*, 66 Mich. 358.

2. It was not negligent to allow the fireman to operate the engine in the manner shown by the evidence; citing *Greenwald v. Railroad Co.*, 49 Mich. 197.

3. Not a particle of evidence was offered tending to show any

notice to the defendant, actual or constructive, that Moore had been negligent or untrustworthy in any manner, and, if he had become so habitually negligent and untrustworthy as charged, the defendant would not be liable unless it had notice, or ought to have taken notice, of it; citing *Davis v. Railroad Co.*, 20 Mich. 105; *Railroad Co. v. Dolan*, 32 Id. 510; *Railroad Co. v. Gilbert.* 46 Id. 176; *Hilts v. Railway Co.*, 55 Id. 437.

4. Personal negligence of the defendant is the gist of this action. When a servant demands from his master compensation for an injury received in his service, he must trace some distinct fault to the master himself, which must be the one charged in the declaration; citing *Mining Co. v. Kitts*, 42 Mich. 34; *Batterson v. Railway Co.*, 49 Id. 184; *Mitchell v. Railway Co.*, 51 Id. 236; *Catlin v. Railroad Co.*, 66 Id. 358.

5. The mere fact that an employé was injured without fault on his part does not raise any presumption of negligence in the employer; citing *Prentiss v. Furniture Co.*, 63 Mich. 478; *Henry v. Railway Co.*, 49 Id. 495.

6. Defendant's duty to its employés is to exercise due care in the selection and retention in its employment of competent and trustworthy persons as their fellow-servants, and in order to recover plaintiff must show affirmatively some delinquency in this respect on its part; citing *Davis v. Railroad Co.*, 20 Mich. 105; *Scripps v. Reilly*, 38 Id. 10; *Mining Co. v. Kitts*, 42 Id. 34; *Smith v. Railway Co.*, 46 Id. 258; *Hilts v. Railway Co.*, 55 Id. 437; *Catlin v. Railroad Co.*, 66 Id. 358.

7. Plaintiff's attempt to make the coupling with his hand instead of by the use of a stick, as required by the rule of defendant, was of itself gross contributory negligence, and prevents a recovery; citing *Lyon v. Railroad Co.*, 31 Mich. 429; *Gardner v. Railroad Co.*, 58 Id. 584; *Wolsey v. Railroad Co.*, 33 Ohio St. 227.

*Frank A. Rodgers* (*M. L. Dunham*, of counsel), for plaintiff, contended:

1. There was surely some evidence, indeed much evidence, touching the question of negligence, and it was for the jury to say what its value was; citing *Wisner v. Davenport*, 5 Mich. 501; *Brooke v. Railway Co.*, 15 Id. 332; *Railroad Co. v. Van Steinburg*, 17 Id. 99.

2. As corporations can only act through superintending officers, their negligence with respect to other servants is that of the corporation; citing Whart. Neg. § 232; *Railroad Co. v. Herbert*, 116 U. S. 642; *Shanny v. Androscoggin Mills*, 66 Me. 420;

*Fuller v. Jewett*, 80 N. Y. 46; *Sheehan v. Railroad Co.*, 91 Id. 334.

3. Notice to a defendant corporation can be proved by showing notice given to its officer, or agent who was at the time acting for the corporation in the matter in question, and within the range of his authority or supervision, or to one whose duty it was to receive and communicate information to his principal; citing Abbott, Trial Ev. 45; *Hough v. Railway Co.*, 100 U. S. 213; *Pantzar v. Mining Co.*, 99 N. Y. 368; *Corcoran v. Holbrook*, 59 Id. 517.

4. That there are several agents who act jointly in the conduct of the business with reference to which it is sought to effect the principal with notice does not render it necessary, in order to charge him, to bring home to all the agents a knowledge of such facts. Notice to one will be as effectual as notice to all; citing *Bank v. Canal Co.*, 4 Paige, 127; *Bank v. Aymar*, 3 Hill, 262.

CAHILL, J. This action was brought to recover for an injury to the plaintiff, while in the employ of the defendant as switchman at Grand Rapids, on September 6, 1888. The declaration contains five counts, but upon the trial the plaintiff claimed to recover only upon the first and third counts.

The first count alleges that the plaintiff was, as his duty required, on the foot-board in the rear of the switch-engine, and was directed by the defendant to couple to and remove a freight-car then standing on the railroad track in the yard, about six feet distant from the engine, and for that purpose the plaintiff signaled the servant of defendant in charge of the engine to move the engine slowly back to the freight-car, and that the defendant or its servants having charge or control of the engine,—

" Not doing its duty in this behalf, and disregarding the motion or signal so given as aforesaid by said plaintiff, so carelessly, negligently, and unskillfully started said engine with a full head of steam, thereby causing said engine to move suddenly and with great force against said freight-car, and by reason of the accelerated motion, and by reason of the carelessness and negligence of said

defendant and its servants, this plaintiff was thrown off
his balance on said foot-board, and causing him to fall
or pitch forward, whereby his arm was caught at the
wrist between the draw bar of said engine and the
bumpers of said freight-car, and the hand of said plaint-
iff crushed and severed from his body."

The third count sets up the duty of the defendant to
employ sober, careful, and competent men as engineers,
switchmen, and firemen. It avers that defendant did not
employ a careful and sober man and put him in charge
of the engine,—

"And did employ and put in charge of said engine
one David Moore, who was careless and negligent in the
discharge of his duties, and who was in the habit of
using intoxicating drinks, and who was in the habit of
causing or permitting unskilled and unsuitable persons to
run and manage the said engine in the business of the
said defendant, and had thus been careless and negligent,
and in such habit as above set forth, and of using intoxi-
cating drinks, for a long space of time prior to the 26th
day of July, 1888, to wit, for a period of one year prior
to said 26th day of July, 1888, all of which was well
known to said defendant, and was then and there
unknown to the said plaintiff."

It then proceeds to state that the plaintiff, in the
exercise of his duties, was standing on the foot-board at
the rear of the engine, and was called upon to couple
thereto and remove a certain freight-car standing on the
railroad track in the yard, about six feet distant from
the engine, and that, for the purpose of making the
coupling, plaintiff signaled the defendant and its servant,
the said David Moore, then in charge of the said engine,
to move the engine back to the freight-car slowly, but
that said defendant, by and through its said servant and
engineer, David Moore, disregarded its duty to cause the
said engine to be managed with due care, and by a
skilled and careful man, and to be run slowly and quietly
back to said car, and, disregarding said plaintiff's signal,—

"Caused and permitted one who was not the engineer, but was a raw and unskilled fireman on said engine, to run and manage the same, and, by and through the said fireman, did start the said engine too quickly and with too much force and speed, and caused said engine to be dashed against said freight-car with great violence, and thereby, without any fault or negligence on the part of said, plaintiff, he, the said plaintiff, was caused to lose his balance and pitch forward against said car, and, by the rebound of said car against said engine, the hand of said plaintiff was caught between the draw-bar of said engine and the bumper of said car, and was crushed in such manner and to such an extent as to make amputation thereof necessary."

And it avers that the accident was caused by the negligence of the defendant in putting and continuing said Moore in charge of said engine, and by the carelessness and negligence of said person in charge of the engine, and for want of due care and attention to the signal given by the plaintiff.

The evidence on the part of the plaintiff showed that the accident occurred on September 6, 1888, in the afternoon. The plaintiff had been in the employ of the defendant as switchman in the yard at Grand Rapids, about 11 days. Previous to that he had been employed in the freight-house of the Grand Rapids & Indiana Railroad Company at Grand Rapids for about three years, and during that time had coupled cars. At the time of the accident, the plaintiff was standing on the foot-board at the rear of the engine. David Moore, the engineer, was on the engine, and the fireman, also named Thompson, was operating it under the direction of the engineer. The engine was on a side track leading from a point in the yard north of Fulton street, and southward across Fulton street. Upon this track there were several cars to be removed. The engine was to the north of the cars, and was backing down to couple to and remove them.

The engine was backed down slowly in obedience to
signals made by plaintiff until it struck the car.    The
plaintiff failed to make the coupling, and the car was
moved by the concussion a distance of 1½ car-lengths.
The engine stopped within about four or five feet of the
car.    The plaintiff, being still on the foot-board, again
signaled for the engine to back, and took the coupling-
pin in his hand to enter it into the head of the draw-bar
of the car.    The engine backed up and struck the car.
The evidence is conflicting as to whether it struck the
car hard or otherwise.    It is also conflicting as to whether
plaintiff was injured at this time.    The plaintiff himself
testified as follows:

" *Q*. When you missed that coupling—failed to make
the coupling—what did you do?    You said that the car
run forward some fifty feet or such a matter, and that the
engine followed after it.    Now, take up the statement at
that point and go on and state what you did then.

" *A*. Well, as the car run ahead, the engine followed
until I got across the sidewalk of the street, and she
stopped, and the car was moving just as though it was
about to stop.    I noticed the wheel and I took hold of
the link, and I raised my hand for him to back up, and
the engine jumped, and that was the last I knew of it.

" *Q*. What do you mean by ' the engine jumped?'

" *A*. Gave a sudden jerk."

Other witnesses testified that the second contact
between the engine and the car caused the empty car to
strike the end of the car next south of it, standing on
the south side of Fulton street, and to rebound toward
the engine; and on the rebound, and while both the
engine and car were moving toward each other, the
plaintiff again attempted to make the coupling, and in
this third attempt his hand was injured.    After the evi-
dence was all in, the defendant requested the court to
instruct the jury that the plaintiff could not recover,

which request was refused.   The case was submitted to
the jury, who found a verdict for the plaintiff.

The only error assigned relates to the refusal of the
circuit judge to charge as requested by defendant's counsel.
The undisputed evidence is that, at the time of the acci-
dent, the engine was being operated by Frank Thompson,
the fireman.   The negligence relied on by plaintiff as the
immediate cause of the injury was the unskillful handling
of the engine by Thompson.   Plaintiff testified that at
the critical moment when he was about to couple the car
the engine jumped or gave a sudden jerk, which caused
him to miss his calculation, and caught his hand between
the draw-bar of the engine and the car.   If this were all
that were in the case, clearly the plaintiff could not
recover.   The fireman was a fellow-servant in this general
employment, and his negligence was one of the risks
which the plaintiff assumed when he accepted employment
from the defendant.   The theory of the plaintiff's case
was that the engineer, Moore, was habitually negligent
and untrustworthy, and that he frequently allowed incom-
petent persons to run his engine, and that on the occasion
in question his allowing the fireman, Thompson, to operate
the engine was the direct cause of the injury.   The
evidence of the engineer's incompetency and untrustworth-
iness is very slight.   Some of the plaintiff's witnesses tes-
tify that he sometimes disregarded the signals of the
switchmen in the yard; that he was in the habit of hav-
ing visitors upon the engine, and, at times, went away
and left it entirely in the control of his fireman.   On the
contrary, the testimony for the defendant showed that
Moore had been employed as engineer in the same yard
since 1873, and that during that time no one had been
injured by his engine before the plaintiff, and that no
serious injury to property had been caused through his
negligence.   His superior officers testified to his being a

sober, reliable man, and a skillful engineer. But the previous negligence of the engineer, if established, was not important unless he was also shown to have been negligent at the time of this injury.

The only allegation of negligence connecting the engineer with the plaintiff's injury is that which charges that it was negligent for him to allow the fireman, Thompson, to run the engine. It is not contended that it is necessarily negligent to allow the fireman to run the engine. The proof showed that this is customary, and sometimes necessary, and that it is the way in which firemen are educated to be engineers. If it is ever safe to allow a fireman to handle an engine, it must be when, as in this case, it is done under the immediate direction of the engineer. Whether it was negligent to allow this particular fireman to run the engine, or not, must depend on whether he had had such experience in the work as to make him reasonably safe and fit for it. There is no evidence of his unfitness. The plaintiff put in no evidence on the subject, but the defendant put in evidence that he had been employed by the defendant about 20 months as a fireman, and 6 months as a brakeman; that he had been accustomed to handling the engine on which he was at work more or less, and that he was entirely competent to do so. That being so, there was no evidence to show that Moore, the engineer, was guilty of negligence in allowing the fireman to operate the engine on the occasion in question. As this was the gist of the plaintiff's action, the entire failure of proof upon this point made it the duty of the circuit judge to direct a verdict for the defendant.

The judgment is reversed, and a new trial granted.

The other Justices concurred.