HILTON & DODGE LUMBER COMPANY *v.* INGRAM.

1. When the master performs the duty imposed by law of employing compe-
tent servants, and a fellow-servant of the plaintiff, without the master's
knowledge or authority, selects from the competent servants thus employed
one who is unsuited for the special task created by an emergency, and trans-
fers him from work he can do to work he can not do, the act of thus assign-
ing him is not the act of the master but that of a fellow-servant. .
2. The duty of selection need not always be performed by the master himself.
In the nature of things, in the case of corporations such selection must be
by agents.
3. If the one to whom this duty has been committed is negligent, it is treated
as the negligence of the master.
4. If the agent making the selection was diligent, it is to be treated as the dili-
gence of the master.
5. If the record is silent as to whether the agent making the selection and trans-
ferring the servant from one department to another was negligent or dili-
gent, then the record is to be treated as likewise silent as to the master's
conduct in transferring him from one task to another.
6. There is no presumption in such a case against the master, nor does any arise
from the mere happening· of a subsequent injury.
7. It must appear that the master, or the person authorized to make the assign-
ment, knew or was negligent in failing to learn of the unfitness of the serv-
ant to perform the new duties to which he was assigned to meet an emer-
gency.
8. A fellow-servant without the master's knowledge can not, by an assumption
of authority, convert himself into a vice-principal or alter ego of the master.
9. If the person making the assignment to the new duty was not authorized to
employ or discharge, and made such assignment without the master's knowl-
edge or consent, and if he was a coemployee with the injured plaintiff, then
the case falls within the doctrine of fellow-servants.
10. But if the person making such assignment to the new duty was authorized
to employ and discharge, and to make such assignment to meet the emer-
gency, and if he knew of the incompetency of the servant to perform the
new task, his negligence would be treated as the negligence of the master.
And if the other facts entitling the plaintiff to recover are established to the
satisfaction of the jury, they would be authorized to find in his favor.
11. Where the defendant denied liability, and offered evidence to show that the
injury was the result of an accident, the defendant was entitled to a charge
adjusted to this theory, even without a special request therefor.

Argued February 16,—Decided March 4, 1904.

Action for damages.    Before Judge Parker.    Glynn superior
court.    July 21, 1903.

Lumber as sawn was trucked along an elevated platform or
"brow," and thence lowered to a pile on the ground.    Dudley was
inspector on the brow.    The regular truckman, Bryan, was absent.
There is a conflict in the evidence as to who selected Anderson

to act as a substitute.    Anderson testifies that he was directed to leave his work on the ground, and to take Bryan's place, by Lyles, the general superintendent of the defendant company; and that he objected at the time, saying that he "had not experience enough to do that work, and had never done it."    Dudley testifies that he "picked up" Anderson "and put him there to work;" but, on cross-examination, says he is not positive whether he or Lyles put Anderson "up there."    Wiles, who was in charge of the hands in the yard, testifies: "I do not know anything about who sent . . Anderson out on the brow. . . Dudley requested me to send him a man, and I sent Anderson; he was in my charge that morning."    There is no evidence that either Dudley or Wiles had the right to employ or discharge, or to assign employees engaged in one department to work in another; no evidence that either knew that Anderson was inexperienced, incompetent, or unable to truck lumber on a two-wheeled truck, and no evidence that the master knew of the absence of the regular truckman, or that Anderson had been assigned to the new work.    Lyles, the general superintendent, was dead at the time of the trial.    There was evidence that Ingram, the plaintiff, had originally employed Anderson for the company, when Anderson was a boy of about fourteen years; that afterwards Ingram had promoted Anderson to a man's work and pay; that Anderson had been with the company for three or four years, engaged at different classes of work, and had trucked lumber on the ground with a four-wheeled truck; that he had sometimes worked on the brow, but not with a two-wheeled truck; that during the morning of the day of the injury another employee assisted Anderson with the two-wheeled truck; that in the afternoon, while Anderson alone was pushing the lumber, the truck "got away from him," and a stick of lumber fell through a hole on the edge of the platform, striking Ingram, who was inspecting lumber underneath.    The plaintiff insists that the company was negligent in allowing Anderson, an incompetent and inexperienced boy, to engage in the work, and was also negligent in allowing the hole to remain in the platform.    The company insists that Anderson was competent to perform the work, which required strength but no special skill; that the lumber fell while being placed sidewise on the pile on the ground; that it did not fall through the hole, and that the injury was occasioned either by

the negligence of a fellow-servant of the plaintiff, or as the result of an accident for which no one was to blame. Among other grounds of the motion for a new trial it was alleged that the court erred in failing to charge on the theory that the plaintiff's injuries were occasioned by an accident; and in charging that if Anderson was assigned to work on the brow by the general superintendent, or the inspector Dudley, then such officer or agent would be the alter ego of the defendant, and any negligence in this respect, if any be shown, would be attributable to the company. The defendant assigns as error, that this charge was unauthorized by the evidence, and was in direct conflict with the further charge of the court that the inspector Dudley, the truckman Anderson, and the plaintiff were all fellow-servants; and that under the testimony Dudley was under the jurisdiction and subject to the control of the superintendent Lyles, not an alter ego of the defendant, but a fellow-servant of the plaintiff.

*W. E. Kay* and *W. G. Brantley,* for plaintiff in error.

*D. W. Krauss* and *Toomer & Reynolds,* contra.

LAMAR, J. (after stating the foregoing facts.) There was evidence from which the jury could have found that Anderson was transferred from the work on the ground, for which he was competent, to work with a two-wheeled truck on the elevated platform, for which he was alleged to be incompetent. This assignment to a new department of work was by the concurrent action of Wiles, who was in charge of the hands in the yard, and Dudley, who was inspector of lumber on the elevated platform. All three were fellow-servants of the plaintiff, Ingram. The record presents the question as to the responsibility of the master for injuries inflicted by Anderson upon Ingram, Anderson being competent for the work for which he was selected, and alleged to be incompetent for the new task to which he had been assigned to fill a vacancy caused by temporary absence of the regular truckman. The master is bound to furnish safe material and safe appliances with which, and competent servants by whom, his work is to be carried on. If, however, he complies with this requirement of the law, and a fellow-servant of the plaintiff, out of proper instrumentalities and agencies, makes an improper selection, the employer is not liable to a coemployee injured as a result thereof. If the

master supplies the proper material, and the plaintiff's fellow-servant selects, from the mass of good lumber supplied, a piece which is too small, or puts it together so unskillfully as to construct an unsafe ladder, staging, or scaffold, in consequence of which the same falls, the resulting injury is referable to the negligence of the fellow-servant in making an unfit selection, or in improperly putting together the proper material furnished. By parity of reasoning, when the master performs the duty imposed by law of employing competent servants, and a fellow-servant of the plaintiff, without the master's knowledge or authority, selects, from the competent servants thus employed, one who is unsuited for the special task, and transfers him from work he can do to work he can not do, the act of thus assigning him is not the negligence of the master, but that of a fellow-servant. It was therefore error to charge that whether the servant alleged to be incompetent was assigned to the task by the general superintendent, or by the inspector, in either case they would be the company's alter ego, and negligence by either would be attributable to it. A fellow-servant without the master's knowledge can not, by an assumption of authority, convert himself into a vice-principal or alter ego.

Treating the assignment of Anderson to the new duty as the equivalent of an original employment for that purpose, the result is not different. The duty of selection need not always be performed by the master himself. In the nature of things, in the case of corporations such selection must be by agents. If the one to whom this duty has been committed is negligent, it is treated as the negligence of the master. On the other hand, if the agent making the selection was diligent, it is to be treated as the diligence of the master. If the record is silent as to whether the agent making the selection was negligent or diligent, then it is the same as though the record were silent as to the master's conduct in transferring Anderson from one task to another. There is no presumption in such a case against the master, nor does any presumption arise from the happening of the injury; but it must appear that the master, or the person authorized to make the selection, knew, or negligently failed to learn, of the incomptency of the person selected. *McDonald* v. *Eagle & Phenix Co.*, 68 *Ga.* 842. There is here neither evidence nor presumption that Dudley himself was incompetent, or that he knew, or was negligent in fail-

ing to know, that Anderson was unsuited for the work of trucking on the elevated platform.

One would suppose that there were many cases in which the question presented by the charge here had been discussed and decided; but after diligent search we have found few bearing on the point.   In Norfolk R. Co. *v.* Thomas (Va.), 44 Am. St. Rep. 909, it was raised, but left open.   In other cases, where a fireman had been permitted to do the work of an engineer, the company was held liable to the injured plaintiff, it appearing that the conductor who made the assignment was authorized so to do by the company, and knew of the incompetency of the fireman; or else that the defendant knew of the custom to permit firemen to perform such duties.   Harper *v.* Indianapolis R. Co., 47 Mo. 567, 4 Am. R. 353; O. & M. Ry. Co. *v.* Collarn, 73 Ind. 261, 38 Am. Rep. 134; McElligott *v.* Randolph, 61 Conn. 157, 29 Am. St. Rep. 181; Henry *v.* Brady, 9 Daly, 142; Fraser *v.* Schroeder, 163 Ill. 459.   Compare *Blackman* v. *Thomson-Houston Co.,* 102 *Ga.* 69. There are, however, a few cases directly in point, from which we quote.   In Felch *v.* Allen, 98 Mass. 572, it was held that if, without authority from the master in whose warehouse they are engaged in the same work, one of two servants directs the other to use in the work an elevator in a dangerous and improper manner, for which it was not intended, and the master had no reason to believe that it would be so used, and such other in complying with this direction is injured by a fall caused by a defect in the elevator, the master is not liable in damages for the injury.   In Greenwald *v.* Marquette R. R., 49 Mich. 199, an engineer allowed a fireman to operate the engine.   Without warning he backed the train; and the court held that the plaintiff was not entitled to recover, as the injury was occasioned by the negligence of the fireman, who was a fellow-servant.   See also Thompson *v.* Lake Shore R. Co., 84 Mich. 281.

In Houston & Texas Central R. Co. *v.* Myers, 55 Tex. 110, the engineer was competent, but was not on the engine, which was being operated by the fireman, who backed rapidly without giving the signal.   The court said:   " Conceding that it was an act of negligence upon the part of the engineer to leave the engine in the hands of the fireman, to be operated by him, and that it was an act of negligence for the fireman to attempt to operate the

same, still the testimony shows that the engineer selected by the company, and placed in charge of the engine, was a good and competent man for the business, and that this is the isolated act of negligence shown by the record, upon his part. Neither is there any complaint but that the fireman was a good and competent man for the business for which he had been selected, and to which he had been assigned by the company. If, as claimed by appellee, the injury was the direct result of negligence of the engineer and fireman, then he not only failed to show the use of [want of] reasonable care upon the part of the company in selecting and retaining such servants, but he affirmatively shows that the engineer is a good and competent man for the business. Upon clear and well-established principles of law, appellee could not recover for the injury on account of the neglect of his fellow-servants, under the facts and circumstances of this case."

In Core v. Ohio River Railroad Co., 38 W. Va. 468, where a brakeman was injured by the alleged negligence of a fireman who had been permitted by the engineer to operate the locomotive, the court held that it was necessary for the plaintiff to show that the fireman was incompetent; that he was negligent; that the defendant knew he was unskilled; that the plaintiff did not know it; that the fireman was managing the engine, and "that the defendant permitted, either expressly or impliedly, the fireman to manage the engine." Compare Wright v. N. Y. Central R. Co., 25 N. Y. 562, which, however, has been criticized because there the inexperienced engineer was assigned to duty by the superintendent, whose negligence was that of the company.

There was evidence to warrant the contention on the part of the defendant that the injury was the result of an accident, and it was entitled to a charge adjusted to that theory, without a special request therefor.

The foregoing conclusions require the grant of a new trial, and it is unnecessary to consider in detail the other grounds.

Cited by the plaintiff in error:    On the failure to charge as to accident, 112 *Ga.* 765, 639.    On the charge as to alter ego, 102 *Ga.* 64; 82 *Ga.* 27; 67 *Ga.* 762; 111 *Ga.* 427; 110 *Ga.* 192; 108 *Ga.* 196; 77 *Ga.* 214; 83 *Ga.* 343; 81 *Ga.* 49; 93 *Ga.* 57.

Cited by defendant in error:    On failure to charge as to accident, 115 *Ga.* 602.    As to master's duty to employ competent

servant, 86 *Ga.* 418 ;  89 *Ga.* 149 ;  76 *Ga.* 823 ;  107 U. S. 457 ; 4 Am. Rep. 353 ;  108 *Ga.* 196 ;  88 *Ga.* 56.

*Judgment reversed.    All the Justices · concur, except Simmons, C. J., absent.*